John H. Gomez (SBN 171485)
John P. Fiske (SBN 249256)
**GOMEZ TRIAL ATTORNEYS**
655 West Broadway Suite1700
San Diego, CA 92101
Telephone:  (619) 237-3490
Fax:   (619) 237-3496
Attorneys for Plaintiff

[Additional Counsel Appear On Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| ROGER LARSEN, individually and on behalf of all others similarly situated,<br><br>PLAINTIFF,<br><br>v.<br><br>VIZIO INC.,<br><br>DEFENDANT. | CASE NO._____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>Violation of CAL. BUS. & PROF. CODE § 17200, *et seq.*;<br>Violation of CAL. BUS. & PROF. CODE § 17500, *et seq.*;<br>Violation of the Consumers Legal Remedies Act, CAL. CIV. CODE § 1750, *et seq.*;<br>Violation of the Maine Unfair Trade Practices Act, 5 ME. REV. STAT. ANN. tit. 5, § 205, *et seq.*;<br>Breach of the Covenant of Good Faith and Fair Dealing;<br>Common Law Fraud;<br>Negligent Misrepresentation;<br>Common Counts/Assumpsit; and<br>Breach of Express Warranty.<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Roger Larsen ("Plaintiff" or "Larsen") hereby files this class action complaint on behalf of himself and all others similarly situated, by and through the

undersigned attorneys, against Defendant Vizio, Inc. ("Vizio" or "Defendant") and alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief based upon, *inter alia*, investigation conducted by his attorneys.

## NATURE OF THE CASE

1.     What consumers perceive as motion on a television screen is actually the display of multiple still images in rapid succession.  Refresh rate refers to the number of times per second a unique image is displayed on a television screen.  Refresh rate is expressed in Hertz, which is defined by the International System of Units as cycles per second.  In other words, a television with a refresh rate of 60 Hz displays 60 unique images per second on the screen.  The advertised refresh rates of modern televisions are an important differentiator among competing televisions and are, likewise, a key component of pricing, just like resolution and screen size.

2.     For the last several years Vizio has systematically misrepresented the refresh rate of certain of its LCD televisions (the "Televisions"[1]) by overstating, falsifying and obfuscating their actual refresh rates to improve sales.

3.     This misleading advertising technique has been very successful by any measure.  Vizio, which was started just 12 years ago, has become the leading seller of LCD televisions in the United States with revenue of $3.1 billion in 2014.

4.     Plaintiff, individually and on behalf of the Class defined below, seeks to obtain relief from Defendant, including, *inter alia*, damages and declaratory relief.

5.     Specifically, this class action is brought to remedy violations of law in connection with Defendant's fraudulent and deceptive marketing and pricing scheme

---

[1] As used herein, the phrase "Televisions" refers to Vizio models E420i-A1, E550i-A0, E400i-B2, E400i-B0, E500i-B1, E600i-B3, E700i-B3, M401i-A3, E550VA, P502ui-B1, P702ui-B3, P602ui-B3, and P552ui-B2, and XVT3D474SV. Plaintiff reserves the right to amend this list as further facts are revealed during discovery.

GOMEZ TRIAL
ATTORNEYS

2

relating to the Televisions. Vizio represents, through advertising to potential customers, that the Televisions have double the refresh rates that they actually possess, and that by purchasing the Televisions with such higher refresh rates, they will be able to see more images per second than they actually do.

6. Defendant's marketing techniques are false and misleading in that the refresh rates in the Televisions are actually half the amount of what is represented to consumers through advertisements.

7. Defendant also inflates its LCD prices to reflect the higher quality refresh rate misrepresentations. As a consequence of this scheme, consumers across the nation are paying more than they would otherwise pay if the true facts were disclosed by Defendant, and consumers are receiving a lower quality product than is represented in Defendant's advertising.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this district and division, is subject to personal jurisdiction in this district and division, and therefore is deemed to be a citizen of this district and division. Additionally, Defendant has advertised in this district and division and received substantial revenues and profits from their sales of Televisions in this district and division; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred within this district and division. Throughout the class period, Defendant has directed its national false advertising campaign from the district and division such that Defendant's improper conduct emanates from this district

and division.

10.    This Court has personal jurisdiction over Defendant because it conducts substantial business in this judicial district and division, and intentionally and purposefully directed Televisions into the stream of commerce within the districts of California and throughout the United States from its corporate headquarters in this district and division.

## PARTIES

### The Plaintiff

11.    Plaintiff Roger Larsen is a resident of Mount Vernon, Maine.

12.    On or about October 27, 2014, Plaintiff bought a 50 inch Vizio E500i-B1 television through Amazon.com.

13.    Prior to purchasing his Television, Mr. Larsen reviewed advertisements and technical specifications created and disseminated by Defendant which represented that his Television had a refresh rate of 120Hz.

14.    In truth, Plaintiff's television has an actual refresh rate of 60Hz.  Plaintiff relied upon and was misled by Defendant's false advertising.

15.    Plaintiff Larsen has suffered an ascertainable loss as a result of Defendant's conduct described herein in that he paid more than he otherwise would have paid for his Television (if he had chosen to purchase his Television at all), but for Defendant's misrepresentations.

### The Defendant

16.    Defendant Vizio, Inc. is a corporation duly organized and existing under the laws of the State of California with its headquarters and principal place of business located at 39 Tesla, Irvine, California 92618.

17.    Forbes listed Vizio as the 157th largest privately held company in the United States in 2013.  Started in 2002 with 3 employees and $600,000, Vizio's rise to lead the LCD television market in the United States has been meteoric.  By 2006,

Vizio's annual revenue was approximately $700 million.  By 2007, it was said to exceed $2 billion.

18.    Most recently, Forbes reported that Vizio had sales of $3.1 billion as of October 2014.[2]  Vizio employs approximately 400 individuals, but subcontracts out all manufacturing and much of its engineering and design.

19.    Vizio is, in essence, principally a sales and marketing company whose goal is to sell as many Vizio-branded products as possible.

20.    Unfortunately, in Defendant's zeal to sell televisions, it has misled millions of consumers and misrepresented its products to the detriment of Plaintiff and the Class.

## **FACTUAL ALLEGATIONS**

21.    As explained above, the videos we watch on television are merely a series of still photographs displayed in such rapid succession that we perceive movement. Refresh rate refers to the number of unique images we see, as expressed in Hertz, or cycles per second.  At this time video is not recorded at any more than 60 images per second, with movies typically being filmed at 24 images per second. This is because our electricity runs at the same rate.[3]

22.    If too few images are displayed per second, viewers can see what is referred to as motion blur.  Motion blur refers to the apparent streaking of rapidly moving objects.  Motion blur can be evident in fast moving sports such as basketball or football.

23.    The Televisions at issue here are all LCD televisions.  The term LCD refers to Liquid Crystal Display.  In basic terms, this technology filters a white light to create black and colored images.  Historically, response time, or the amount of time it takes for

---

[2] *See* http://www.forbes.com/companies/vizio/ (last visited Nov. 20, 2014).

[3] Geoffrey Morrison, *What is a Refresh Rate,* CNET (October 8, 2012), http://www.cnet.com/news/what-is-refresh-rate/.

GOMEZ TRIAL
ATTORNEYS

the LCD to change color has hindered the ability to fight motion blur.  But as LCD technology has developed and evolved, LCD technology surrounding response time has improved.  Initial LCD televisions had a refresh rate of 60Hz (or 60 unique images per second).  But a few years ago, LCDs hit the market with higher refresh rates.  These started at 120Hz, though now, they are available in 240Hz and beyond.

24.    The increased refresh rate (120Hz and higher) was introduced by manufacturers as a means of reducing the motion blur problem traditionally suffered by LCDs.

25.    The logical question arises when one is aware that the fastest rate of recording of images for television occurs at 60 unique images per second:  how can a television produce *more* than the original number of unique images per second found in the original?  The answer is a technology called Motion Interpolation.

26.    Motion Interpolation refers to a process by which a television receives successive images and creates a unique image (or images) to insert between them:



27.    The foregoing illustration demonstrates the manner in which technology permits the creation of ***unique*** images.  If original image sequence above was at 60Hz, the motion interpolated sequence would be at 120Hz.  In other words, the processor of the television is creating a new ***unique*** image for every image originally broadcast.

28.    Using Plaintiff's Vizio E500i-B1 as an example, Defendant states that the television has "A super-fast 120Hz refresh rate…"  This statement, like Defendant's

statements concerning all the Televisions is incorrect. Plaintiff's television actually only displays 60 *unique* images per second, not 120.

29. Rather than paying to integrate motion interpolation technology and provide accurate representations of the actual Hertz of its Televisions, Vizio uses an inferior, less expensive, backend technology to create more *non-unique* images, or simply misstates the refresh rate altogether.

30. One inferior technology Vizio utilizes to overstate the actual Hertz of the televisions is scanning backlight.

31. Scanning backlight is a simple technology that displays the *same* image twice in rapid succession with an unperceivable instant of black between the identical images.

32. In this way, Vizio is claiming to provide a 120Hz display, but is really providing nothing more than a 60Hz display displayed twice. The reality is, as Vizio well knows, a television (falsely) marketed as possessing 120Hz is worth more in the marketplace than one that is honestly advertised as 60Hz. Vizio has deliberately taken a dishonest route to increase sales and pad the technical specifications of its Televisions.

33. While many average consumers may not have the technical aptitude to look beyond a basic comparison of a television's advertised statistics, the same cannot be said of technology writers, who have begun to bring to light the dishonest tactics challenged here. For example, the respected technology review resource CNET has published articles detailing this fabrication, such as "Fake refresh rates: Is your TV really 120Hz? In an effort to keep prices down and sales up, TV companies are pushing TVs with 'fake' refresh rates. Know your terms and tech to make sure you're really getting what you think you're paying for." In an article entitled "Beware Of Phony LCD HDTV Refresh Rates" the well-known technology website HDGuru, described the issue as follows: "Buyers beware: top TV makers are quietly substituting industry standardized refresh rate specification with their own artificial rate numbers, deceiving

GOMEZ TRIAL
ATTORNEYS

prospective buyers into purchasing an HDTV over a possibly better performing (but more honestly labeled) competing model."

34. In short, by engaging in the aforementioned misleading and dishonest conduct, Defendant is precluding consumers from making an apples to apples comparison when comparing Vizio's Televisions to competing brands. Defendant Vizio engages in this confusing and manipulative marketing scheme to trick consumers into purchasing LCD televisions with the belief that they are receiving higher refresh rates than they actually are.

35. Average consumers, relying on Vizo's advertisement can and did reasonably believe they were purchasing products with the actual and true refresh rates that were advertised for the Televisions, when they were, in fact, being willfully and deliberately misled by Defendant.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action on his own behalf, and on behalf of the following Classes pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Classes consist of each of the following:

**National Class:**

All persons or entities in the United States who purchased one or more Televisions from November 1, 2010 until the present.

Or, in the alternative,

**Maine Class:**

All persons or entities in Maine who purchased one or more Televisions from November 1, 2010 until the present.

37. Together, the National and Maine Classes shall be collectively referred to herein as the "Class." Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for purposes of resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definition after conducting discovery.

38.   <u>Numerosity</u>:   The Class is so numerous that joinder of all members is impracticable.   While the exact number and identities of individual members of the Class are unknown at this time, such information being in the possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes that the Class consists of hundreds of thousands, if not millions, of persons and entities that were deceived by Defendant's conduct.

39.   <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class.   These questions predominate over the questions affecting individual Class members.   These common legal and factual questions include, but are not limited to:

a.   whether Defendant misrepresented the refresh rate in the Televisions;

b.   whether Defendant's conduct violated the Maine Unfair Trade Practices Act;

c.   whether Defendant's conduct violated the California Unfair Competition Law;

d.   whether Defendant's conduct violated the California False Advertising Law;

e.   whether Defendant's conduct violated the California Consumers Legal Remedies Act;

f.   whether Plaintiff and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief; and

g.   whether the Court may apply the law of the State of California to the entire Class because Defendant's conduct emanated from California.

40.   <u>Typicality</u>:   All of Plaintiff's claims are typical of the claims of the Class since each Television was advertised with the same type of false and/or misleading statements, regardless of model or production year.   Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct.   Plaintiff is

advancing the same claims and legal theories on behalf of himself and all absent Class members.

41.     Adequacy:  Plaintiff is an adequate representative because his interests do not materially or irreconcilably conflict with the interests of the Class that he seeks to represent, he has retained counsel competent and highly experienced in complex class action litigation, and he intends to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

42.     Superiority:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Members of the Class can be readily identified and notified based on, *inter alia*, Defendant's records and databases.

43.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

44.     California's substantive laws may be constitutionally applied to the claims of Plaintiff and the National Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.  California has significant contact, or significant aggregation of contacts, to the claims asserted by

Plaintiff and all Class members, thereby creating state interests that ensure that the choice of California state law is not arbitrary or unfair.    Specifically, Defendant's headquarters and principal place of business are located in California, and upon information and belief, the conduct that gave rise to Plaintiff's claims emanated from California.

## VIOLATIONS ALLEGED

### COUNT I

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,
BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*
(On Behalf of the National Class)**

45.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

46.    California Business & Professions Code § 17200, *et seq.* prohibits acts of "unfair competition", which is defined by Business & Professions Code § 17200 as including any "any unlawful, unfair or fraudulent business act or practice . . . ."

47.    Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by concealing and misleading Plaintiff and Class members concerning the actual refresh rates of the Televisions.

48.    These acts and practices have also deceived Plaintiff and are likely to deceive persons targeted by such statements and omissions.  In failing to disclose material facts concerning the refresh rates of the Televisions, Defendant breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff and Class members.  The omissions and acts of concealment by Defendant pertained to information material to Plaintiff and Class members in that statements concerning the refresh rates would have been likely to deceive them based on a reasonable consumers' expectations and assumptions.

49.    The injuries suffered by Plaintiff and Class members are also greatly

GOMEZ TRIAL
ATTORNEYS

outweighed by any potential countervailing benefit to consumers or to competition. Nor are they injuries that Plaintiff and Class members should or could have reasonably avoided.

50.    Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under CAL. BUS. & PROF. CODE § 17200.

**<u>COUNT II</u>**
**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW, BUSINESS AND PROFESSIONS CODE § 17500, *et seq.***
**(On Behalf of the National Class)**

51.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

52.    In violation of California Business & Professions Code § 17500, *et seq.*, Defendant has disseminated or caused to be disseminated deceptive advertising misrepresentations, omissions and practices as described herein.  These statements are actionable violations of § 17500 in that Defendant expressly states that the Televisions have attributes which they do not possess.

53.    Defendant's advertising misrepresentations, omissions, and practices made in connection with the sale of the Televisions are unfair, deceptive and/or misleading within the meaning of California Business & Professions Code § 17500, *et seq.*  These representations are likely to, and did, deceive reasonable consumers such as Plaintiff Larsen.

54.    In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were and are misleading or likely to mislead for the reasons set forth above.

55.    As detailed above, Plaintiff suffered injury in fact and a loss of money or property as a result of Defendant's acts and practices, which violate § 17500, *et seq.*

GOMEZ TRIAL ATTORNEYS

56.     Pursuant to California Business & Professions Code § 17535, Plaintiff and members of the Class seek, and are entitled to:

    a.     an order enjoining Defendant from continuing to make false and misleading statements concerning the Televisions;

    b.     restitution and disgorgement of any and all excessive amounts paid to Defendant or its agents;

    c.     equitable relief pursuant to CAL. CIV. PROC. CODE § 384;

    d.     pre- and post-judgment interest at the highest rate allowable by law; and

    e.     payment of attorney's fees and costs pursuant to, *inter alia*, CAL. CIV. PROC. CODE § 1021.5, the common fund and private attorney general doctrines.

57.     As a result of Defendant's violations of the false advertising statute, Plaintiff and Class members are entitled to equitable relief as the Court deems appropriate.

<u>COUNT III</u>
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT**
**CALIFORNIA CIVIL CODE § 1750 *et seq.***
**(On Behalf of the National Class)**

58.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

59.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act ("CLRA"), Civil Code section 1750 *et seq.*  Plaintiff brings this action on his own behalf and on behalf of the Class members, all of whom are similarly situated consumers within the meaning of CAL. CIV. CODE. § 1781.

60.     The acts and practices described in this Complaint were intended to result in the sale of goods, specifically televisions, in consumer transactions.  Defendant has violated, and continues to violate, the CLRA, CAL. CIV. CODE § 1770, including but not limited to subdivisions (a)(5), (a)(7), and (a)(16) by:

a.      Representing that the Televisions have characteristics, as described herein, which they do not have.

b.      Representing that the Televisions are of a particular standard or quality, when they are of another.

c.      Representing that the Televisions were supplied in accordance with previous representations, when they were not.

61.     Plaintiff and the Class members have suffered damage as a result of these violations.

62.     Defendant, directing such conduct from its headquarters in this judicial district, misled consumers and concealed material facts concerning the Televisions even though Defendant was well aware of the true facts when Plaintiff purchased his Television.

63.     Defendant's misrepresentations and omissions described in the preceding paragraphs were at a minimum made without the use of reasonable procedures adopted to avoid such errors.

64.     Defendant, directly or indirectly, has engaged in substantially similar conduct with respect to Plaintiff and each member of the Class.

65.     Unless Defendant is enjoined from engaging in such wrongful actions and conduct in the future, members of the consuming public will be further damaged by Defendant's conduct.

66.     At this time, Plaintiff only seeks injunctive relief.  Contemporaneous with the filing of this Class Action Complaint, Plaintiff has sent a demand letter to Defendant pursuant to CAL. CIV. CODE § 1782.  If Defendant refuses to provide the relief demanded by Plaintiff on behalf of himself and the Class, Plaintiff will amend his complaint to seek all available relief under the CLRA.

///

///

///

GOMEZ TRIAL ATTORNEYS

**COUNT IV**
**VIOLATION OF THE MAINE UNFAIR TRADE PRACTICES ACT**
**(On Behalf of the Maine Class)**

67.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

68.    Plaintiff asserts this cause of action on behalf of himself and the other members of the Class.

69.    This cause of action is brought pursuant to the Maine Unfair Trade Practices Act, ME. REV. STAT. ANN. tit. 5, § 205 *et seq.*

70.    The Maine Unfair Trade Practices Act declares unlawful all "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…"

71.    Under the Maine Unfair Trade Practices Act, Defendant's misleading representations regarding their refresh rates are unfair, deceptive and unconscionable.

72.    In the course of misrepresenting the refresh rates of the Televisions to consumers and inflating prices to reflect these misrepresentations, Defendant has engaged in unfair and deceptive acts and practices in trade or commerce in violation of ME. REV. STAT. ANN. tit. 5, § 207.

73.    Defendant violated the § 207 by inflating the prices of the Televisions under the guise of higher quality refresh rate televisions.

74.    Defendant violated the § 207 by failing to disclose to consumers the true refresh rates of the Televisions.

75.    Defendant violated § 207 by failing to charge consumers the fair market value for the Televisions because of the inflated prices justified by misrepresentations of the refresh rates.

76.    Defendant's acts and practices as alleged in the foregoing paragraphs were false, misleading, deceptive, and unfair to consumers, in violation of the Maine Unfair Trade Practices Act.

77.     Plaintiff and Class members relied on Defendant's misrepresentations. Had Defendant disclosed the true refresh rates of the Televisions, Plaintiff and Class members would not have purchased them, or would have paid significantly less for them.

78.     As a direct and proximate result of Defendant's deceptive, fraudulent, and unfair practices, Plaintiff and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

79.     Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Defendant.  At this time Plaintiff seeks only injunctive relief pursuant to the Maine Unfair Trade Practices Act.  Contemporaneous with the filing of this complaint, Plaintiff has served a demand letter pursuant to ME. REV. STAT. ANN. tit. 5, § 213.1-A.  If Defendant does not provide appropriate relief to Plaintiff and the Class, Plaintiff will amend this Class Action Complaint to seek all available remedies under the Maine Unfair Trade Practices Act.

<u>COUNT V</u>
<u>BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING</u>
**(On Behalf of the National Class)**

80.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

81.     Defendant has a duty of good faith and fair dealing with respect to their dealings with consumers, including Plaintiff and the Class members.

82.     There is an implied duty of good faith and fair dealing in every contract, and Defendant had an implied duty to ensure that their marketing materials and other representations regarding the quality of its refresh rates were not false and misleading.

83.     Defendant knows that the refresh rate is a primary motivating factor in consumers' purchase decisions.

///

84.     Defendant breached the covenant of good faith and fair dealing by engaging in deceptive and misleading representations of the quality of its refresh rates, and inflating the prices due to the higher claimed refresh rates.

85.     Defendant acted recklessly, maliciously, in bad faith, and without good cause, thereby preventing Plaintiff and the Class from receiving their reasonably expected benefits of their purchases.

86.     Plaintiff and Class members relied to their detriment upon misleading assertions and conduct of Defendant and such reliance may be presumed based on the Defendant's unlawful conduct.

87.     As a direct and proximate result of Defendant's deceptive, fraudulent, and unfair practices, Plaintiff and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

88.     Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Defendant for damages and declaratory relief.

**COUNT VI**
**COMMON LAW FRAUD**
**(On Behalf of the National Class)**

89.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

90.     Defendant made material misstatements of fact to Plaintiff and Class members regarding the refresh rates of the Televisions.  As a result, Plaintiff and the Class were fraudulently induced to purchase the Televisions with false and inflated refresh rates.

91.     These misstatements made by Defendant were made with knowledge of their falsity, and with the intent that Plaintiff and members of the Class would rely upon them.

GOMEZ TRIAL
ATTORNEYS

CLASS ACTION COMPLAINT

92.     As described herein, Defendant fraudulently created artificial reflections of refresh rates for the Televisions that effectively prevented purchasers from making appropriate comparisons.

93.     To further its scheme, Defendant fraudulently inflated the prices of the Televisions to reflect its misrepresentations of the refresh rates in the Televisions.

94.     At the time Defendant made these misrepresentations and concealments, and at the time Plaintiff and Class members purchased the LCD televisions, Plaintiff and the Class were unaware of the falsity of these misrepresentations, and reasonably believed them to be true.

95.     In making these representations, Defendant knew they were false and intended that the Plaintiff and Class members would rely upon such misrepresentations.

96.     Plaintiff and Class members did in fact rely upon Defendant's misrepresentations concerning the refresh rate of the Televisions.

97.     As a direct and proximate result of Defendant's deceptive, fraudulent, and unfair practices, Plaintiff and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

98.     Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Defendant for damages and declaratory relief.

<u>**COUNT VII**</u>
<u>**NEGLIGENT MISREPRESENTATION**</u>
**(On Behalf of the National Class)**

99.     Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

100.    Under the circumstances alleged, Defendant owed a duty to Plaintiff and Class to provide them with accurate information regarding the true refresh rates of the Televisions.

///

GOMEZ TRIAL ATTORNEYS

CLASS ACTION COMPLAINT

101.   Defendant represented to Plaintiff and Class members that by purchasing the Televisions, they would be enjoying higher refresh rates than they actually received.

102.   Defendant's representations, as described herein, were false, negligent and material.

103.   Defendant negligently made these misrepresentations with the understanding that Plaintiff and Class members would rely upon them.

104.   Plaintiff and Class members did in fact reasonably rely upon these misrepresentations and concealments made by Defendant.

105.   As a direct and proximate result of Defendant's negligent actions, Plaintiff and Class members have suffered injury in fact and/or actual damages in an amount to be determined at trial.

106.   Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Defendant for damages and declaratory relief.

## COUNT VIII
## COMMON COUNTS/ASSUMPSIT
### (On Behalf of the National Class)

107.   Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

108.   As Plaintiff and the Class show just grounds for recovering money to pay for benefits Defendant received from them, they have a right to restitution at law through an action derived from the common-law writ of assumpsit by implying a contract at law, or a quasi-contract as an alternative to a claim for breach of contract.

109.   Plaintiff and members of the Class conferred a benefit upon Defendant by purchasing Televisions from Defendant.

110.   Defendant had knowledge that this benefit was conferred upon it.

111.   Defendant, having received such benefits, is required to make restitution

as the circumstances here are such that, as between the two, it is unjust for Defendant to retain such monies based on the illegal conduct described above. Such money or property belongs in good conscience to Plaintiff and the Class members and can be traced to funds or property in Defendant's possession. Plaintiff and Class members have unjustly enriched Defendant through payments and the resulting profits enjoyed by Defendant as a direct result of such payments. Plaintiff's and Class members' detriment and Defendant's enrichment were related to and flowed from the conduct challenged in this Complaint.

112. An entity that has been unjustly enriched at the expense of another is required to make restitution to the other. Under common law principles recognized in claims of common counts, assumpsit, and quasi-contract, as well as principles of unjust enrichment, under the circumstances alleged herein it would be inequitable for Defendant to retain such benefits without paying restitution or damages therefor. Defendant should not be permitted to retain the benefits conferred via payments to be received from and/or paid by Plaintiff and Class members as a result of such transactions, and other remedies and claims may not permit them to obtain such relief, leaving them without an adequate remedy at law.

**COUNT IX**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the National Class or, Alternatively the Maine Class)**

113. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Class Action Complaint as though set forth fully herein.

114. Vizio expressly warranted that its Televisions had certain, specific refresh rates.

115. Vizio breached these express warranties by selling Televisions that did not have these specified refresh rates, thereby injuring Plaintiff and similarly situated Class members.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully requests that this Court:

A.   Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.   Appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

C.   Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class members are entitled;

D.   Award pre-judgment and post-judgment interest on such monetary relief;

E.   Grant appropriate injunctive and/or declaratory relief;

F.   Award reasonable attorneys' fees and costs; and

G.   Grant such further relief that this Court deems appropriate.

///
///
///
///
///
///
///
///
///
///
///
///
///
///

GOMEZ TRIAL
ATTORNEYS

CLASS ACTION COMPLAINT

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated: November 24, 2014                          Respectfully submitted,

By:   /s/ John P. Fiske

John H. Gomez, Esq.
John P. Fiske, Esq.
**GOMEZ TRIAL ATTORNEYS**
655 West Broadway Suite1700
San Diego, CA 92101
Telephone:  (619) 237-3490
Fax:  (619) 237-3496

CUNEO GILBERT & LADUCA, LLP
William Anderson (To Apply *Pro Hac Vice*)
507 C Street, NE
Washington, DC 20002
Tel:  (202) 789-3960
Fax:  (202) 789-1813
wanderson@cuneolaw.com

CUNEO GILBERT & LADUCA, LLP
Charles J. LaDuca (To Apply *Pro Hac Vice*)
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Tel:  (202) 789-3960
Fax:  (202) 789-1813
charlesl@cuneolaw.com

Matthew Schelkopf (To Apply *Pro Hac Vice*)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Tel: (610) 642-8500
Fax: (610) 649-3633
mds@chimicles.com