1   John H. Gomez (SBN 171485)
    John P. Fiske (SBN 249256)
2   **GOMEZ TRIAL ATTORNEYS**
    655 West Broadway Suite1700
3   San Diego, CA 92101
    Telephone: (619) 237-3490
4   Fax: (619) 237-3496
    Attorneys for Plaintiff
5
    [Additional Counsel Appear On Signature Page]
6

7

8                  **UNITED STATES DISTRICT COURT**
       **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**
9

10

11
    ROGER LARSEN, individually and on      Case No.:   8:14-cv-01865-CJC-JCG
12  behalf of all others similarly situated,
                                            **PLAINTIFF'S MEMORANDUM**
13                      PLAINTIFF,          **IN OPPOSITION TO**
                                            **DEFENDANT VIZIO, INC.'S**
14      v.                                  **MOTION TO DISMISS FOR**
                                            **FAILURE TO STATE A CLAIM**
15  VIZIO, INC.,                            **UPON WHICH RELIEF CAN BE**
                                            **GRANTED (FRCP 12(b)(6))**
16                      DEFENDANT.
                                            Hearing Date:   April 20, 2015
17                                          Time:           1:30 p.m.
                                            Courtroom:      9B
18                                          Judge:          Cormac J. Carney
                                            Magistrate Judge:  Jay C. Gandhi
19
                                            **CLASS ACTION**
20
                                            **JURY TRIAL DEMANDED**
21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...........................................................................................i

TABLE OF AUTHORITIES .....................................................................................ii

I.      INTRODUCTION ....................................................................... 1

II.     FACTUAL BACKGROUND.......................................................... 3

    A.    Plaintiff's Decision-Making Process for Buying an LCD Television....... 3

    B.    Refresh Rates and LCD Television Technology Explained ..................... 4

    C.    Vizio's Inflated Refresh Rates ................................................................. 5

    D.    Vizio's False Advertising Has Harmed Plaintiff and Consumers ............ 5

III.    LEGAL STANDARD................................................................... 6

IV.    ARGUMENT .............................................................................. 7

    A.    *Mazza* Does Not Preclude Nationwide Claims Predicated Upon
California Law ........................................................................................ 7

    B.    *Mazza* Analysis Is Premature at the Pleadings Stage ............................. 8

    C.    Plaintiff's Fraud Claims are Pleaded with the Requisite Particularity and
Allege Vizio's Misrepresentations ......................................................... 13

    D.    Plaintiff's Contract Claims State Viable Causes of Action .................... 16

       1.    Plaintiff States a Claim for Common Counts/Assumpsit and Unjust
Enrichment in the Alternative. .......................................................... 16

       2.    The Complaint Alleges a Contract Between the Parties and States a
Claim for Implied Duty of Good Faith and Fair Dealing. .................. 17

       3.    The Complaint Need not Allege Reliance on Vizio's
Misrepresentations, Which Became the "Basis of the Bargain." ........ 18

    E.    Plaintiff Should Be Permitted Leave to Amend If the Court Deems the
Complaint Deficient in Any Respect ..................................................... 20

V.      CONCLUSION .......................................................................... 21

1
2

# **TABLE OF AUTHORITIES**

**Cases**

*Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1989) ..................... 6

*Allen v. Hylands, Inc.*, CV-12-01150 DMG (MANx), 2012 WL 1656750 (C.D. Cal. May 2, 2012) ................................................................................................................ 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................... 6

*Benavides v. State Farm General Ins. Co.*, 136 Cal. App. 4th 1241 (Cal. App. 2d Dist. 2006)............................................................................................................... 18

*Blennis v. Hewlett-Packard Co.*, No. 07-00333, 2008 WL 818526 (N.D. Cal. Mar. 25, 2008)................................................................................................................. 17

*Bohn v. Pharmavite, LLC*, CV 11-10430-GHK (CWx), 2012 WL 8898669 (C.D. Cal. May 16, 2012)................................................................................................... 7

*Brown v. Hain Celestial Group, Inc.*, 913 F.Supp.2d 881 (N.D. Cal. 2012) ........... 19

*Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012)............................. 8, 10, 11

*Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682 (Cal. 1954) ...................................... 16

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ...... 7, 9

*Clancy v. The Bromley Tea Co.*, 12-cv-03003-JST, 2013 WL 4081632 (N.D. Cal. Aug. 9, 2013)........................................................................................................... 12

*Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 236 Cal. Rptr. 605 (1987)8

*Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654 (Cal. 1958) ................... 18

*Donohue v. Apple, Inc.*, 871 F.Supp.2d 913 (N.D. Cal. 2012)................................. 12

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004) ............................. 6, 16

*Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 61 Cal. Rptr. 2d 707 (1997)....17

*Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155 (C.D. Cal. 2012) ............. 8, 10, 11

*Gianino v. Alacer Corp.*, No. 09-cv-1247-CJC (C.D. Cal. Apr. 14, 2010)..............14

*Hauter v. Zogarts*, 534 P.2d 377 (Cal. 1975) .................................................... 19, 20

*In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224 (N.D. Cal. 2012).....................12

*In re Conagra Foods, Inc.*, No. CV 11-05379 MMM (AGRx), 2015 U.S. Dist. LEXIS 24971 (C.D. Cal. 2015)..............................................................19

*In re Google Inc. Gmail Litig.*, 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. June 12, 2014) ......................................................................................12

*In re iPhone S4 Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. Dec. 29, 2014)...........................................................................9, 12

*In re Mattel, Inc.,* 588 F. Supp. 2d 1111 (C.D. Cal. 2008)........................................10

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, No. ML 10-02199 DDP (RZx), 2012 WL 4490860 (C.D. Cal. Sept. 28, 2012).............................................7

*In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077 (S.D. Cal. 2010) ......................................................10

*Longest v. Green Tree Servicing LLC*, 2:14-cv-08150-CAS(RZx), 2015 U.S. Dist. LEXIS 16173 (C.D. Cal. Feb. 9, 2015)...................................................17

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)..........................................................20

*Maine Farmers Exch. v. McGuillicuddy*, 697 A.2d 1266 (Me. 1997) ....................20

*Mazza v. Am. Honda Motor Co, Inc.*, 666 F.3d 581 (9th Cir. 2012)................passim

*Misha Consulting Group, Inc. v. Core Educ. & Consulting Solutions, Inc.*, No. C-13-04262-RMW, 2013 U.S. Dist. LEXIS 163952 (N.D. Cal. Nov. 15, 2013).....17

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001)...........................................................6

*Paffhausen v. Balano*, 708 A.2d 269 (Me. 1998)......................................................17

*Petersen v. Allstate Indem. Co.*, No. SACV 11-1987 DOC (RNBx), 2012 U.S. Dist. LEXIS 32968 (C.D. Cal. 2012)........................................................................13

*Sater v. Chrysler Group, LLC*, No. EDCV 14-00700-VAP (DTBx), 2015 U.S. Dist. LEXIS 21022 (C.D. Cal. Feb. 20, 2015)..............................................................13

*Seely v. White Motor Co.,* 63 Cal. 2d 9 (Cal. 1965) ..................................................16

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .....................................7, 15, 16

*TRC & Assocs. v. NuScience Corp.*, 2013 WL 6073004 (C.D. Cal. Nov. 18, 2013).9

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ...................6, 14, 15

*Wang v. OCZ Tech. Grp., Inc.,* 276 F.R.D. 618 (N.D. Cal. 2011) ............................. 9

*Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 889, 15 P.3d 243, 103 Cal. Rptr. 2d 32 (2001) ........................................................................................ 10

*Weinstat v. Dentsply International, Inc.*, 180 Cal. App. 4th 1213, 103 Cal. Rptr. 3d 614, (Cal. Ct. App. 2010) .................................................................................... 19

*Werdebaugh v. Blue Diamond Growers*, 12-cv-02724-LHK, 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013) ................................................................................... 12

*Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 110 Cal. Rptr. 2d 145 (2001) ......................................................................................................... 8

*Williams v. Gerber Prods.*, 523 F.3d 934 (9th Cir. 2008) ......................................... 6

**Statutes**

Cal. Com. Code § 2313 ........................................................................................ 19

**Rules**

Fed. R. Civ. P. 8(a) ............................................................................................ 20

Fed. R. Civ. P. 8(e)(2) ........................................................................................ 17

Fed. R. Civ. P. 9(b) ....................................................................................... passim

## I.   INTRODUCTION

Plaintiff Roger Larsen's Complaint details the circumstances by which Defendant Vizio, Inc. ("Vizio") has misled consumers regarding the performance specifications of its Vizio LCD televisions (the "Televisions"[1]) and engaged in deceptive, misleading, and otherwise unlawful marketing and advertising practices in its efforts to maximize sales.  Upon reviewing Vizio's motion to dismiss, it is apparent that Vizio misunderstands the premise of Plaintiff's case.  Plaintiff's claims arise from the fact that Vizio affirmatively marketed its Televisions as possessing higher refresh rates than they actually possess.  These misleading claims were uniformly made for the Televisions.  Vizio's discussion of semantics concerning refresh rates versus frame rates is simply that: semantics.  The distinction between these technical terms has no bearing on Plaintiff's claims, nor does this change the end result that Vizio's refresh rate representations were false and materially misleading.

For the past several years, Vizio has overstated, falsified, and otherwise misrepresented the refresh rates of its Televisions by marketing the Televisions as operating with refresh rates that are higher than the refresh rate at which the Televisions are capable of operating.  Because a television refresh rate is a key component of pricing, Vizio has charge consumers significantly higher prices for its Televisions under the guise of heightened or improved technology by misrepresenting the Television refresh rates as substantially higher than what they actually are.

---

[1] As used herein, the phrase "Televisions" refers to Vizio models E420i-A1, E550i-A0, E400i-B2, E400i-B0, E500i-B1, E600i-B3, E700i-B3, M401i-A3, E550VA, P502ui-B1, P702ui-B3, P602ui-B3, and P552ui-B2, and XVT3D474SV.  Plaintiff specifically purchased a Vizio E500i-B1.  Complaint (hereinafter "Complt.") ¶ 28.  Plaintiff reserves the right to amend this list as further facts are revealed during discovery.

As explained in greater detail below, the refresh rates advertised by Vizio are a contrived number obtained by using, among other things, a technology called backlight scanning. The reality is that a Television with, *e.g.*, "120 Hertz (Hz)," merely uses technological trickery to pass off Televisions that truly have a 60Hz refresh rate as having refresh rates of 120Hz (or greater depending upon the Television). Vizio's advertising is nothing short of deceptive and misleading, and this deception has been carried out to the detriment and harm of Vizio's unwitting customers, like Plaintiff, who relied on Vizio's advertising and marketing materials in paying a higher price for the Televisions than he would have otherwise paid (if he had chosen to purchase his Television at all).

Vizio's Motion to Dismiss (hereinafter "Def. Motion") raises a number of alleged deficiencies of the Complaint. First, Vizio argues that this case cannot proceed as a nationwide class action under Ninth Circuit jurisprudence. Def. Motion at 8-17. Before discovery has even commenced – and before Plaintiff has even filed a motion for class certification – Vizio is seeking to affirmatively strike certain of the class allegations in the Complaint. Vizio's efforts to have this Court address or decide choice-of-law are premature, and its arguments on this issue should be summarily rejected.

Vizio next asserts that the Complaint falls short of satisfying the particularity requirement in pleading allegations of fraud under Rule 9(b) of the Federal Rules of Civil Procedure. To the extent that Rule 9(b) even applies to each of the claims to which Vizio asserts it applies, Plaintiff has pleaded the "who, what, when, where, why, and how" of his claims with sufficient particularity to give Vizio adequate notice of the alleged fraudulent conduct underlying those claims.

Finally, Vizio argues that Plaintiff's contract claims should be dismissed due to factual deficiency, including that Plaintiff has failed to allege a contract exists as between him and Vizio; the Complaint does not allege any false statements by Vizio; and, consequently, Plaintiff has not alleged reliance on any statement by

Vizio.  A more careful review of the Complaint makes it quite clear that Plaintiff has in fact alleged the existence of a contract, Vizio's false statements, and reliance upon those misrepresentations.  Furthermore, Vizio's legal contentions regarding Plaintiff's contract claims are simply untenable.

In light of the foregoing, and as more thoroughly discussed below, Vizio's Motion is unpersuasive, as each of its proposed grounds for dismissal are flawed. As such, Vizio's arguments should be rejected and this Court should deny Vizio's Motion to Dismiss.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's Decision-Making Process for Buying an LCD Television

Plaintiff purchased his Vizio Television in October of 2014.  (Dkt. No. 1) Complt. ¶ 12.  Like most consumers do ahead of making a large purchase, Plaintiff conducted research on LCD televisions in order to ensure that he was selecting a quality television set, and, more importantly, that he would receive a television of a quality level consistent with the price.  Plaintiff's television research entailed reviewing advertisements, online reviews, and product descriptions created or disseminated by different television manufacturers.  Plaintiff reviewed these items in order to learn about the technical specifications and capabilities of different television sets.

Vizio was one of the manufacturers whose marketing and advertising materials Plaintiff reviewed.  *Id*. ¶ 13.  One of the key components of the performance of an LCD television, as discussed more fully below, is its refresh rate, or the rate at which an LCD screen refreshes its display per second.  Higher refresh rates allow a television to produce a smoother picture and reduce blurriness and streaking in the LCD display, especially when viewing programs that involve rapid motion.  Refresh rates are as much of a consideration for purchasers of LCD televisions as other specifications, such as screen size or resolution.  Refresh rate was a technical specification Plaintiff expressly considered when comparing

televisions for possible purchase and was an important factor in his ultimate

purchase decision.

In the course of conducting research on different LCD televisions, Plaintiff

came across Vizio's Television model E500i-B1.  He reviewed materials published

or provided by Vizio indicating that this particular model Television has a refresh

rate of 120 Hertz (Hz).  *Id*. ¶ 28.  Plaintiff ultimately decided to purchase an E500i-

B1 model Television under the impression that he purchased a high-quality Vizio

LCD Television with an industry-high refresh rate at the price point.  Plaintiff, like

most consumers, has a basic functional understanding of technical specifications in

televisions, such as refresh rates.  At the time he made his purchase, Plaintiff

understood refresh rates enough to know that the higher the refresh rate in a

television, the higher the quality of the picture that television will display

(including less blurriness and streaking in the picture).  What Plaintiff is not –

again, like most consumers – is an LCD television expert.  At the time he purchased

his Television, Plaintiff lacked the expertise required to discern if what he bought

actually conformed to the technical specifications advertised by Vizio, including

with respect to refresh rates.  In truth, and despite what Vizio advertised and

represented, Plaintiff's Television has an actual refresh rate of 60Hz.  *Id*. ¶ 14.  In

fact, all Televisions have been marketed and advertised by Vizio with inflated

refresh rates.

**B.**    **Refresh Rates and LCD Television Technology Explained**

When LCD televisions initially hit the market, they operated with a refresh

rate of 60Hz.  *Id*. ¶ 23.  In recent years, manufacturers have introduced increased

refresh rates (120Hz and higher) as a means of reducing motion blur, a problem

traditionally suffered by LCD sets.  *Id*. ¶ 22-23.  By way of background, a refresh

rate is the number of times per second that a television set or monitor draws new

data or updates its display.  Motion blur appears as blurriness or streakiness on an

LCD television when the display is moving too quickly and the television cannot

"refresh" its images and data fast enough to keep the picture clear and smooth. Vizio, too, has followed the trend of advertising televisions with higher refresh rates. Plaintiff's Television, for example, was advertised as having "A super-fast 120Hz refresh rate . . . ." Complt. ¶ 28. The problem is that Vizio Televisions do not actually have higher refresh rates at all despite what Vizio advertises.

### C.     Vizio's Inflated Refresh Rates

Instead, Vizio utilizes a backend, inferior technology to overstate the actual Hertz of its Televisions. *Id*. ¶ 29. This technology is referred to as backlight scanning, and it allows Televisions to display the *same* image twice (or more times) in rapid succession with an unperceivable instant of black between identical images. *Id*. ¶ 31. That is, by using a flickering or blinking backlight to create a moment of black on the screen, Vizio Televisions simply repeats a single image two, or more, times. Vizio uses this to advertise that the number of refreshes is doubled (for 120Hz) or more, when in fact they are not. In this way, Vizio claims to provide a 120Hz (in the case of Plaintiff's Television) or higher display, but in reality, these Televisions provide nothing more than a 60 Hz display, displayed twice (or more, depending upon the advertised Hertz and Television). *Id*. ¶ 32.

### D.     Vizio's False Advertising Has Harmed Plaintiff and Consumers

The result of Vizio's technological ruse and deceptive advertising is that it can charge – and has in fact charged – higher prices for its Televisions in a market place where no rational consumer would agree to pay the increased prices were the actual refresh rate (*i.e.*, 60 Hz) of the Televisions disclosed or accurately advertised. *Id*. While technology experts and writers have caught on to and written about the advertising and marketing methods Vizio has employed, many average consumers do not possess the technical aptitude to look beyond basic television specification comparisons and recognize the type of deception in which Vizio has engaged relating to refresh rates. *Id*. ¶ 33. Using vehicles as an example, while consumers may understand that a 3.0L engine is more powerful than a 2.0L engine, few

consumers will have the expertise necessary to test the manufacturer's statement.

As a result, Plaintiff and consumers rely upon the accuracy of what is advertised by Vizio.  Vizio's deliberately misleading and dishonest tactics have precluded consumers from making honest, apples-to-apples evaluations when comparing Vizio's Televisions to competing brands ahead of making a purchase.  Complt. ¶ 34.  Vizio has deliberately taken this dishonest route in an effort to bolster sales and increase its margins, and it has done so to the detriment of its customers.

### III.   LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A claim may only be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (internal citations and quotation marks omitted).  The Court must accept as true all of the plaintiffs' allegations of material fact and construe them in the light most favorable to the plaintiff.  *See Williams v. Gerber Prods.*, 523 F.3d 934, 937 (9th Cir. 2008).  A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, fraud claims are subject to a higher standard and must be pleaded with particularity.  Fed. R. Civ. P. 9(b).  Claims grounded in fraud must "be accompanied by the who, what, when, where, and how of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted).  "To avoid dismissal for inadequacy under Rule 9(b)," a "complaint [must] 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th

Cir. 1989)).  The particularity required in pleading fraud must be "enough to give a defendant notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

## IV.   ARGUMENT

### A.   *Mazza* Does Not Preclude Nationwide Claims Predicated Upon California Law

Defendant reductively asserts that "because Plaintiff is a Maine citizen who did not buy his TV in California, [] he cannot assert claims under California's consumer protection statutes."  Def. Motion at 8.  In support of this argument, Defendant broadly overstates the holding of *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) to the point that no nationwide claims based upon California law could ever be certified if the Court were to adopt Defendant's logic.

Fortunately, this is not the law.  As Chief Judge King held in *Bohn v. Pharmavite, LLC*, CV 11-10430-GHK (CWx), 2012 WL 8898669 at *2 (C.D. Cal. May 16, 2012), "*Mazza* did not purport to hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws, which is unsurprising given the case-specific nature of choice-of-law analysis.  Indeed, the court made clear that its holding was cabined to the facts before it."  This holding makes good sense.  When a defendant is in California and the misconduct occurred in California, application of California laws is not arbitrary or unfair to the defendant and advances the very purpose of the Class Action Fairness Act.  *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 379 (N.D. Cal. 2010) (collecting cases and pointing out California state court decisions "finding that application of California law to nationwide class claims was constitutionally permissible"); *In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, No. ML 10-02199 DDP (RZx), 2012 WL 4490860, at *3 (C.D. Cal. Sept. 28, 2012) ("To the

extent that Pom argues that California law cannot be applied to consumers nationwide as a matter of law, Pom is incorrect."); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 546 (C.D. Cal. 2012) ("Defendants' interpretation of *Mazza* contradicts the express purpose of CAFA.  Defendants interpret *Mazza* as eliminating the case-specific inquiry required by the California Supreme Court and holding *as a matter of law* that California and other states' consumer laws materially differ *in all cases* and other states have a greater interest in the application of their law *in all cases.* Such an interpretation would preclude the certification of nationwide classes in CAFA class actions based on the causes of action at issue in *Mazza.*") (emphasis in original).

In *Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 242,  (2001), the court noted that "California's consumer protection laws are among the strongest in the country," and further noted that a California court may properly apply the same California statutes at issue to non-California members of a nationwide class, where the defendant is a California corporation and some or all of the challenged conduct emanates from California.  *Id.* (citing *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 612-13, (1987)).  *Clothesrigger* explicitly held that California courts normally may apply California's pro-consumer laws to consumers from other states: "California's more favorable laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery." *Clothesrigger*, 191 Cal. App. 3d at 616.

### B. *Mazza* Analysis Is Premature at the Pleadings Stage

"Whether a nonresident plaintiff can assert a claim under California law is a constitutional question based on whether California has sufficiently significant contacts with the plaintiff's claims."  *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012) (citing *Mazza*, 666 F.3d at 589-90).  Here, Plaintiff alleges: that Defendant is a California corporation with its headquarters and principal place of business located in Irvine, California, Complt. ¶ 16; that

"[t]hroughout the class period, Defendant has directed its national false advertising campaign" from California, *Id.* ¶ 9; that "Defendant's improper conduct emanates from this district and division," *Id.*; and that Defendant "intentionally and purposefully directed Televisions into the stream of commerce within the districts of California and throughout the United States from its corporate headquarters in this district and division," *Id.* ¶ 10.  These allegations meet Plaintiff's initial burden of demonstrating a connection to California to shift the burden to Defendant.  *Cf. TRC & Assocs. v. NuScience Corp.*, No. 2:13-cv-6903-ODW(CWx), 2013 WL 6073004, at *5 (C.D. Cal. Nov. 18, 2013) ("The Complaint is not based solely on a commercial transaction outside of California, but is instead based on material misrepresentations originating in California with NuScience, traveling through Florida, and ending up in Ohio with TRC . . . .  Therefore, the Court finds that extraterritoriality does not bar the UCL and FAL claims against Lumina."); *In re iPhone S4 Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *7 (N.D. Cal. Dec. 29, 2014) (declining to dismiss out of state plaintiffs' California consumer protection claims where "Plaintiffs have alleged that Apple's purportedly misleading marketing, promotional activities and literature were coordinated at, emanate from and are developed at its California headquarters, and that all 'critical decisions' regarding the marketing and advertising were made within the state"); *Wang v. OCZ Tech. Grp., Inc.,* 276 F.R.D. 618, 630 (N.D. Cal. 2011) ("Though Wang's allegations of OCZ's California-based conduct are general, they provide a sufficient basis at the pleading stage for the invocation of California law . . . .  [T]he facts alleged are that the misleading marketing, advertising, and product information are 'conceived, reviewed, approved, or otherwise controlled from [OCZ's] headquarters in California.'"); *Chavez,* 268 F.R.D. at 379 ("Defendants are headquartered in California and their misconduct allegedly originated in California. With such significant contacts between California and the claims asserted by the class, application of the California consumer protection laws would not be arbitrary

or unfair to defendants."); *In re Mattel, Inc.,* 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) ("Plaintiffs have adequately alleged that Mattel and Fisher–Price's conduct occurred, if at all, in—or had strong connections to—California. Plaintiffs complain of misrepresentations made in reports, company statements, and advertising that are reasonably likely to have come from or been approved by Mattel corporate headquarters in California." (citation omitted)).

Because "Plaintiff certainly *can* assert a claim under California law," the burden shifts to Defendant "to defeat the presumption that California law applies and to show a compelling reason justifying displacement of California law." *Forcellati*, 876 F. Supp. 2d at 1160 (internal quotation marks and alterations omitted); *see also Bruno,* 280 F.R.D. at 546 (noting that "[t]he California Supreme Court has expressly held that, when conducting a California choice-of-law analysis, the defendant must 'shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims.'" (quoting *Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 889, 15 P.3d 243, (2001)). In order to meet this burden, a defendant must first show that "differences in state law are 'material,' that is, they 'make a difference in this litigation.'" *Bruno,* 280 F.R.D. at 547 (quoting *Mazza*, 666 F.3d at 590). And if a "true conflict" exists, the defendant must demonstrate that, "[u]nder the facts and circumstances of this case," the foreign jurisdiction has a greater interest in the case than California. *Mazza*, 666 F.3d at 594.

First, Defendant has not – and at the pleading stage, cannot[2] – demonstrate that the laws of California and Maine are meaningfully different. *See, e.g., Forcellati*, 876 F. Supp. 2d at 1160 (rejecting defendants' argument that plaintiff

---

[2] "In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleading stage." *In re Sony Grand Wega KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1096 (S.D. Cal. 2010) (collecting cases); *see also Forcellati*, 876 F. Supp. 2d at 1159-60 (same).

lacked "standing" to bring claims under California consumer protection laws where defendants failed to "address whether these differences [in state law] are material based on the facts and circumstances of *this* case.") (emphasis in original). Defendant's general assertion here that California and Maine law materially differ, does not address how any purported difference will affect the outcome of *this* case.

Second, even if Defendant has demonstrated that the laws of California and Maine are meaningfully different as to the outcome of this case (it has not), Defendant has not met its burden of demonstrating that, under the facts of this case, Maine has a greater interest in this litigation than California. *See Forcellati*, 876 F. Supp. 2d at 1161 ("Defendants can only meet [their] burden by engaging in an analytically rigorous discussion of each prong of California's 'governmental interests' test . . . ."). Therefore, Defendant has not met its burden of demonstrating that California law does not apply in this case.

Despite its failure to demonstrate that California law should not apply, Defendant insists that "because Plaintiff is a Maine consumer [] Maine's consumer laws govern his claims," and he is precluded under *Mazza* from availing himself of California's consumer protection laws.  Def. Mem. at 1.  But as Defendant knows, *Mazza* stands for no such proposition.  Instead, *Mazza* – an opinion concerning nationwide class certification under California law – simply "precludes the application of California law to class members from states whose consumer protection laws differ *materially* from California's."  *Allen v. Hylands, Inc*., CV-12-01150 DMG (MANx), 2012 WL 1656750, at *2 (C.D. Cal. May 2, 2012).  "It does not categorically rule out application of California's laws to out-of-state class members."  *Id.*; *see also Bruno*, 280 F.R.D. at 547 (explaining that *Mazza* requires consideration of the particular "facts and circumstances" of the case before the court, and concluding that "*Mazza* did not announce a change in state law that would allow Defendant[] to substitute *Mazza*'s holding in lieu of Defendant['s] own careful analysis of choice-of-law rules as applied to this particular case");

*iPhone Consumer Litig.*, 2013 WL 3829653, at *9 (same).  Court after court has found that conducting the choice-of-law analysis at the pleadings stage is premature.  *See In re Google Inc. Gmail Litig.*, 13-MD-02430-LHK, 2013 WL 5423918, at *19 (N.D. Cal. June 12, 2014) ("the rigorous choice of law analysis required by *Mazza* cannot be conducted at the motion to dismiss stage."); *Clancy v. The Bromley Tea Co.,* 12-cv-03003-JST, 2013 WL 4081632, at *7 (N.D. Cal. Aug. 9, 2013) ("Such a detailed choice-of-law analysis is not appropriate at [the motion for judgment on the pleadings] stage of the litigation. Rather, such a fact-heavy inquiry should occur during the class certification stage, after discovery."); *In re Clorox Consumer Litig.,* 894 F.Supp.2d 1224, 1237 (N.D. Cal. 2012) ("Significantly, *Mazza* was decided on a motion for class certification, not a motion to strike. At [the motion to dismiss] stage of the instant litigation, a detailed choice-of-law analysis would be inappropriate. Since the parties have yet to develop a factual record, it is unclear whether applying different state consumer protection statutes could have a material impact on the viability of Plaintiffs' claims.") (citation omitted); *Donohue v. Apple, Inc.,* 871 F.Supp.2d 913, 923 (N.D. Cal. 2012) ("Although *Mazza* may influence the decision whether to certify the proposed class and subclass, such a determination is premature. At [the motion to dismiss] stage in the litigation—before the parties have submitted briefing regarding either choice-of-law or class certification—plaintiff is permitted to assert claims under the laws of different states in the alternative."); *Werdebaugh v. Blue Diamond Growers*, 12-cv-02724-LHK, 2013 WL 5487236, at *16 (N.D. Cal. Oct. 2, 2013) ("Here, the Court finds that striking the nationwide class allegations at [the motion to dismiss/strike] stage of this case would be premature.").

For all these reasons, this Court should reject Defendant's argument that Plaintiff is precluded from pursuing claims under California law, and decline Defendant's invitation to conduct a decidedly premature *Mazza* analysis.

**C.     Plaintiff's Fraud Claims are Pleaded with the Requisite Particularity and Allege Vizio's Misrepresentations**

Vizio's motion next asserts that Plaintiff does not plead his fraud-based claims – which Vizio asserts are Counts I-VIII of the Complaint – with particularity as required by Federal Rule of Civil Procedure 9(b).  The Complaint satisfies the Rule 9(b) heightened pleading standard for fraud claims and Vizio's arguments should be rejected.

Before addressing the merits of Vizio's Rule 9(b) arguments, it is important to note this Court held that negligent misrepresentation claims are not subject to the more exacting standard of Rule 9(b) "because that tort relies on an objective standard of reasonableness, unlike common law fraud which contains a scienter requirement, and Rule 9(b) requires heightened specificity for allegations of fraud, not a lack of due care."  *Sater v. Chrysler Group, LLC*, No. EDCV 14-00700-VAP (DTBx), 2015 U.S. Dist. LEXIS 21022, at *30 (C.D. Cal. Feb. 20, 2015); *see also Petersen v. Allstate Indem. Co.*, No. SACV 11-1987 DOC (RNBx), 2012 U.S. Dist. LEXIS 32968, at *10-11 (C.D. Cal. 2012) ("Because the California tort of 'negligent misrepresentation' has a critically different element from the tort of 'fraud,' analyzing negligent misrepresentation under Rule 9(b) is contrary to both the express language and policy of the statute.").  Even where a plaintiff's deceptive trade practices claims sound in fraud, this Court has refused to extend the 9(b) pleading standard to claims for negligent misrepresentation.  *See Sater*, 2015 U.S. Dist. LEXIS 21022, at *31.  Plaintiff's negligent misrepresentation claim asserts Vizio's negligence as the basis of this claim.  Complt. ¶¶ 102-103, 105.  As such, and contrary to Vizio's assertion, the Rule 9(b) particularity standard does not apply to this particular claim.

Further, Vizio incorrectly asserts that Plaintiff's good faith and fair dealing (Count V) and common count/assumpsit (Count VIII) claims are grounded in fraud, and are therefore subject to the Rule 9(b) requirements.  Def. Motion at 18.  These

claims are based in contract.  Vizio does not cite any Ninth Circuit authority to support its unilateral extension of this Court's decision on a defendant's motion to dismiss in *Gianino v. Alacer Corp.*.  Notably, in *Gianino*, the Court did not apply the Rule 9(b) particularity requirement to Plaintiffs' contract claims (nor did the Court conduct a premature *Mazza* analysis).  *Gianino v. Alacer Corp.*, No. 09-cv-1247-CJC, slip op. at 3 (C.D. Cal. Apr. 14, 2010).  Furthermore, fraud is not a necessary element of Plaintiff's contract claims in this case, and thus only those allegations of those claims which aver fraud are subject to the Rule 9(b) heightened pleading standard.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 1103-1105 (9th Cir. 2003).  Plaintiff's good faith and fair dealing claim alleges that Vizio "acted recklessly, maliciously, in bad faith, and without good cause."  Complt. ¶ 85.  Plaintiff's common count and assumpsit claim does not allege fraud, and in the alternative, simply alleges a *prima facie* case for unjust enrichment or restitution.  *Id.* ¶¶ 108-111.  These claims are not grounded in fraud. Further, any allegations of fraudulent conduct embedded in Plaintiff's good faith and fair dealing and common count/assumpsit/restitution claim, taken alone, are pleaded with requisite particularity, both in the enumerated claim itself and by incorporation.  *See id*. ¶¶ 28 ("A super-fast 120Hz refresh rate"), 80, 84, 107, 111.  Nevertheless, and assuming *arguendo* that the Court finds all of Counts I-VIII to be "grounded in fraud" (which position Plaintiff contests), each of these claims is pleaded with sufficient particularity to survive a Rule 9(b) challenge.

Plaintiff alleges Vizio marketed and advertised inflated and false refresh rates in the Televisions and that he relied upon these statements in purchasing a Television, paying a higher price than he would have otherwise paid.  *See, e.g.*, Complt. ¶¶ 2 (alleging Vizio has made misrepresentations as to refresh rates over the past several years ["who," "what," and "when"]); 6 (alleging the Televisions possess refresh rates that are lower than advertised ["what"]); 7 (alleging Vizio inflated prices to correspond with exaggerated refresh rates ["why"]); 12 (alleging

Plaintiff's purchase of a Television on October 27, 2014 ["when"]); 20 (alleging Vizio engaged in deceptive and fraudulent advertising to bolster sales ["why"]); 21-32 (alleging the method and explaining the technology by which Vizio carried out fraudulent marketing and advertising ["how"]). Each Count in the Complaint incorporates by reference all preceding paragraphs therein. Complt. ¶¶ 45, 51, 58, 67, 80, 89, 99, 107. Specifically, Plaintiff alleges reliance upon Vizio's misleading and false advertising, including a statement that the Televisions have "A super-fast 120Hz refresh rate," in deciding to purchase and when purchasing his Television in October 2014. Complt. ¶¶ 12, 14, 28. The Complaint further alleges that Vizio uses scanning backlight technology in order to pass off what is merely 60Hz refresh rate technology as a higher 120Hz technology. *Id*. ¶¶ 30-32. Vizio's suggestion that Plaintiff makes no allegations regarding deceptive statements and that the Complaint falls short of the Rule 9(b) pleading requirements is simply not credible. The Complaint contains ample allegations identifying the "who, what, when, where, and how" of each claim. *Vess*, 317 F.3d at 1106.

Contrary to Vizio's suggestion,[3] Rule 9(b) does not require Plaintiff to plead above and beyond providing Vizio with notice of the alleged conduct giving rise to his claims. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Vizio would have the Court apply the Rule 9(b) pleading standard in such a rigidly exacting manner that it would pose an absolute barrier to claimants bringing fraud claims altogether. This is not the intent of Rule 9(b). *See Swartz*, 476 F.3d at 764. Vizio's diatribe regarding technological semantics (Def. Motion at 19-20), its unnecessary recitation of Plaintiff's Complaint (*Id*.), and its application of a defamation standard (*Id*. at 20) is transparently intended to obfuscate the issues, and is inapposite to the facts of this case. The Complaint provides Vizio with notice of

---

[3] *See* Def. Motion at 18 (Vizio posits that Plaintiff must go as far as identifying Amazon reviews regarding Television refresh rates, corrective disclosures by Vizio, or discussing Plaintiff's own knowledge regarding refresh rates in order to meet the Rule 9(b) pleading requirements).

the particular conduct giving rise to Plaintiff's claims, *Swartz*, 476 F.3d at 764, and sets forth the time, place, and specific content of Vizio's false representations. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). For these reasons, Vizio's arguments should be rejected.

> ### D. Plaintiff's Contract Claims State Viable Causes of Action
>
> #### 1. Plaintiff States a Claim for Common Counts/Assumpsit and Unjust Enrichment in the Alternative.

As set forth above in Section IV.A, California law should apply to Plaintiff's breach of contract actions. Nevertheless, a choice-of-law analysis is premature at the pleadings stage of this litigation. Notwithstanding this fact, Plaintiff has set forth allegations sufficient to support a cause of action for common counts, assumpsit, and, alternatively, restitution under a theory of contract or quasi-contract.

In seeking dismissal of the common counts, Vizio contends the Complaint does not allege the existence of a contract. *Id*. at 21. Plaintiff has in fact alleged a contract exists. Complt. ¶ 108. The Complaint also alleges the existence of an express warranty by Vizio (*Id*. ¶ 114-115), which gives rise to the relevant contract. Vizio directly warranted to Plaintiff and every consumer who purchased a Television that the Televisions have a refresh rate of 120Hz, or higher. *Id.* ¶ 32. Vizio overlooks the fact that express warranties negate the traditional requirement for privity. *See, e.g., Seely v. White Motor Co.,* 63 Cal. 2d 9, 14 (Cal. 1965) (holding that no privity of contract was required where defendant made express warranty to plaintiff); *Burr v. Sherwin Williams Co.,* 42 Cal. 2d 682, 696 (Cal. 1954) ("[W]here the purchaser of a product relied on representations made by the manufacturer in labels or advertising material, and recovery from the manufacturer was allowed on the theory of express warranty without a showing of privity.").

Vizio acknowledges "[t]he only essential allegations of a common count are (1) the statement of indebtedness in a certain sum, (2) the consideration, *i.e.*, goods

sold, work done, etc., and (3) nonpayment." *Misha Consulting Group, Inc. v. Core Educ. & Consulting Solutions, Inc.*, No. C-13-04262-RMW, 2013 U.S. Dist. LEXIS 163952, at *7 (N.D. Cal. Nov. 15, 2013) (holding that Plaintiff's basic common counts claim sufficiently stated claim for relief and denying motion to dismiss) (quoting *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 460, (1997)).  As in the complaint in *Misha Consulting Group, Inc.*, Plaintiff's Complaint sets forth the requisite elements of a common counts claim with allegations that Vizio is indebted to him because he paid monies for his Television and those monies remain in Vizio's possession.  *Id.* ¶¶ 109-111.  *See Misha Consulting Group, Inc.*, 2013 U.S. Dist. LEXIS 163952, at *7.

In the alternative, Plaintiff has also pled a claim for unjust enrichment and restitution (Complt. ¶ 108-111), the elements of which are the same regardless of the applicable state law because the claim is legally sufficient where a plaintiff asserts that a defendant unjustly obtains a benefit at the expense of another.  *See, e.g., Paffhausen v. Balano*, 708 A.2d 269, 271 (Me. 1998); *Longest v. Green Tree Servicing LLC*, 2:14-cv-08150-CAS(RZx), 2015 U.S. Dist. LEXIS 16173, at *24 (C.D. Cal. Feb. 9, 2015) (denying motion to dismiss plaintiff's unjust enrichment and restitution claim).  Vizio ignores these substantive elements.

The Complaint alleges Plaintiff conferred a benefit upon and Vizio and that the benefit was received by Vizio in the form of payment for the Television, and that Vizio has inequitably retained that benefit.  Complt. ¶¶ 109, 111.  A party may state as many separate claims or defenses as the party may have, regardless of consistency.  *Blennis v. Hewlett-Packard Co.*, No. 07-00333, 2008 WL 818526, at *4 (N.D. Cal. Mar. 25, 2008) (citing FED. R. CIV. P. 8(e)(2)).  Therefore, Plaintiff's unjust enrichment claim is properly pled in the alternative to its contract-based claims.

### 2.  The Complaint Alleges a Contract Between the Parties and States a Claim for Implied Duty of Good Faith and Fair

1    **Dealing.**

2    Based on the same erroneous argument that a contract does not exist between

3    Vizio and Plaintiff, Vizio argues Plaintiff cannot maintain his good faith and fair

4    dealing claims. .  Def. Motion at 21-22.  As stated in Section IV.C.1 above, Plaintiff

5    has pledthe existence of a contract or implied contract.  *See* Complt. ¶ 108.  Vizio

6    acknowledges that some states recognize an implied covenant of good faith and fair

7    dealing in the performance of contractual obligations.  California is one such state.[4]

8    *See, e.g.*, *Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654, 658 (Cal. 1958)

9    ("There is an implied covenant of good faith and fair dealing in every contract that

10   neither party will do anything which will injure the right of the other to receive the

11   benefits of the agreement."); *Benavides v. State Farm General Ins. Co.*, 136 Cal.

12   App. 4th 1241, 1249 (Cal. App. 2d Dist. 2006) ("[T]he law implies in every

13   contract a covenant of good faith and fair dealing.") (citation omitted).

14   Vizio's choice-of-law argument is, once again, premature at the pleadings

15   stage.  Nevertheless, the Complaint alleges an express warranty as the basis of the

16   contractual relationship between the parties, or that a contract at law is implied as

17   between the parties arising from the sale of a Television to Plaintiff.  Accordingly

18   there is a covenant of good faith and fair dealing implicit in that contract.  *Id*.  As

19   Vizio's premise that Plaintiff has not alleged the existence of acontract is

20   inaccurate, its argument should accordingly be rejected.

21           **3.      The Complaint Need not Allege Reliance on Vizio's**

22                    **Misrepresentations, Which Became the "Basis of the**

23                    **Bargain."**

24   Finally, Vizio moves to dismiss Plaintiff's breach of express warranty claim

25   (Count IX) on the ground that the Complaint fails to allege reliance on any false

26

27   _____

28   [4] As set forth in Section IV.A, *supra*, California law should apply to Plaintiff's
     contract claims.

statement by Vizio that became the "basis of the bargain." Def. Motion at 22.
First, and contrary to Vizio's assertion, Plaintiff has alleged a false statement by
Vizio. As alleged in the Complaint and stated above, Vizio falsely advertised
across a variety of platforms that its Televisions operate with refresh rates higher
than those the Televisions actually possess. Complt. ¶ 28.

Second, Plaintiff does not need to demonstrate reliance to succeed on an
express warranty claim. It is well established that reliance is not a *prima facie*
element of breach of express warranty claims under CAL. COM. CODE § 2313, let
alone "reasonable reliance." *See, e.g., In re Conagra Foods, Inc.*, No. CV 11-
05379 MMM (AGRx), 2015 U.S. Dist. LEXIS 24971, at *128 (C.D. Cal. 2015)
(holding that proof of reliance on specific promises or representations is not
required to prevail on breach of express warranty claim under California law)
(citation omitted); *Weinstat v. Dentsply International, Inc.*, 180 Cal. App. 4th 1213,
1227, 103 Cal. Rptr. 3d 614, 625, (Cal. Ct. App. 2010) ("While the tort of fraud
turns on inducement, . . . breach of express warranty arises in the context of
contract formation in which reliance plays no role."); *Brown v. Hain Celestial
Group, Inc.*, 913 F.Supp.2d 881, 899-900 (N.D. Cal. 2012) (holding that proof of
reliance on specific promises is not required to prevail on breach of express
warranty claim under California law). The key under Section 2313 "is that the
seller's statements – whether fact or opinion – must become 'part of the basis of the
bargain.'" *Hauter v. Zogarts*, 534 P.2d 377, 383-384 (Cal. 1975) (citiations
omitted). In *Hauter*, the California Supreme Court offered the following discussion
regarding breach of express warranty claims under Section 2313:

> The basis of the bargain requirement represents a significant change
> in the law of warranties. Whereas plaintiffs in the past have had to
> prove their reliance upon specific promises made by the seller, the
> Uniform Commercial Code requires no such proof. According to
> official comment 3 to the Uniform Commercial Code following
> section 2313, "*no particular reliance . . . need be shown* in order to
> weave [the seller's affirmations of fact] into the fabric of the
> agreement.

*Hauter*, 534 P.2d at 383-84.

Vizio cites the decision in *Maine Farmers Exch. v. McGuillicuddy*, 697 A.2d 1266, 1268 (Me. 1997) for the proposition that proving reliance is required to make out an express warranty claim.  Even if Maine law were to apply, *McGuillicuddy* merely noted, in a statement that in essence amounts to *dicta*, that "[c]omments to [Section 2-313] *suggest* that the requirement that the affirmation become part of the 'basis of the bargain' is meant to continue the uniform sales act requirement that the purchaser must show reliance on the affirmation in order to make out a cause of action for a breach of warranty." *Id*. (emphasis added).  Therefore, regardless of which state law applies, Plaintiff need not allege reliance.  Plaintiff need only allege that Vizio's affirmation concerning Television refresh rates became a part of the basis of the bargain, which Plaintiff has done.

Notwithstanding the foregoing, the Complaint alleges that Plaintiff reviewed advertisements and technical specifications disseminated by Vizio and did, in fact, rely upon this information in purchasing his Television.  Complt. ¶¶ 13-14, 35.  Plaintiff's Complaint does not need to actually prove reliance (the requirement of which is contested) or any other requirement of the claims therein at the pleadings stage, as Vizio suggests.  Def. Motion at 23.  As pleaded, Plaintiff's Complaint sets forth a plain statement of his claim for breach of express warranty in compliance with Fed. R. Civ. P. 8(a), and as such, Vizio's request for dismissal of this claim should be denied.

**E.**     **Plaintiff Should Be Permitted Leave to Amend If the Court Deems the Complaint Deficient in Any Respect**

It is well-settled that leave to amend should be freely granted.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  Further, Plaintiff's investigation of his claims and causes of action is continuing and facts supporting those claims continue to be collected.  As such, if the Court determines that the Complaint is deficient in any manner, Plaintiff respectfully submits that he should be permitted leave to

amend the Complaint to cure any deficiencies the Court identifies.

## V.   CONCLUSION

For the reasons stated above, this Court should deny Vizio's Motion in its entirety or, in the alternative, permit Plaintiff to amend the Complaint.

Dated:  March 18, 2015            Respectfully submitted,

By: __/s/ John P. Fiske _____
                    John H. Gomez, Esq.
                    John P. Fiske, Esq.
                    **GOMEZ TRIAL ATTORNEYS**
                    655 West Broadway Suite1700
                    San Diego, CA 92101
                    Telephone: (619) 237-3490
                    Fax: (619) 237-3496

                    CUNEO GILBERT & LADUCA, LLP
                    William Anderson (To Apply *Pro Hac Vice*)
                    507 C Street, NE
                    Washington, DC 20002
                    Tel: (202) 789-3960
                    Fax: (202) 789-1813
                    wanderson@cuneolaw.com

                    CUNEO GILBERT & LADUCA, LLP
                    Charles J. LaDuca (To Apply *Pro Hac Vice*)
                    8120 Woodmont Avenue, Suite 810
                    Bethesda, MD 20814
                    Tel: (202) 789-3960
                    Fax: (202) 789-1813
                    charlesl@cuneolaw.com

                    Matthew Schelkopf (To Apply *Pro Hac Vice*)
                    CHIMICLES & TIKELLIS LLP
                    One Haverford Centre
                    361 West Lancaster Avenue
                    Haverford, PA 19041
                    Tel: (610) 642-8500
                    Fax: (610) 649-3633
                    mds@chimicles.com

1    *Attorneys for Plaintiffs*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28